UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISON

US IRON FLA, LLC,

    Plaintiff,

v.                                                                                      CASE NO.:

GMA GARNET (USA) CORP.,

    Defendant.
_____/

## COMPLAINT

Plaintiff, US IRON FLA, LLC ("Plaintiff" or "US Iron"), sues Defendant, GMA GARNET (USA) CORP. ("GMA"), and alleges:

### STATEMENT OF JURISDICTION AND VENUE

1. This Court has jurisdiction over this action based on diversity jurisdiction pursuant to 28 U.S.C. §1332 as complete diversity exists between the parties and the amount in controversy exceeds $75,000.00.

2. Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2) and (c)(2) because a substantial part of the events giving rise to the claim occurred in the Northern District of Florida in Walton County, Florida and Defendant is registered to conduct business in the State of Florida.

1

## ALLEGATIONS COMMON TO ALL COUNTS

3. Plaintiff, US Iron, is a Florida corporation with its principal place of business located in Walton County, Florida.

4. At all times relevant, Mark S. Miller ("Miller") is the manager of US Iron.

5. Defendant, GMA, is a corporation incorporated under the laws of the State of Delaware, which is duly registered and authorized to do business in the State of Florida since 2007.

6. At all times relevant, Rod Liebeck ("Liebeck") is the President of GMA.

7. Upon information and belief, GMA is a global garnet supplier of garnet abrasive used for waterjet cutting and abrasive blasting.

8. GMA has two garnet mines and eight processing plants globally.

9. A bi-product of garnet mining and harvesting is ilmenite, a titanium-iron oxide mineral.

10. In or around 2018, GMA retained Brianna Hanson of Resource Matters ("Hanson") as a consultant for finding alternate market applications for GMA's ilmenite from its United States mining operations.

11. On or about July 24, 2019, Hanson spoke with Miller regarding GMA's ilmenite. That same day, Hanson sent Miller an e-mail regarding GMA's ilmenite,

2

its chemical properties and the stock pile that GMA had of ilmenite, concluding "Since the ilmenite is a byproduct, GMA can supply consistently at a fair price." A copy of the July 24, 2019 e-mail is attached hereto and made a part hereof as Exhibit "A".

12. On September 13, 2019, Liebeck, sent an e-mail to Miller regarding GMA's ability to supply ilmenite. The e-mail stated in relevant part that "I recently met with Brianna Hanson and she informed me that you were considering our ilmenite supply…I can assure you that GMA has production capacity to supply in excess of 10,000 mt per annum and would commit to holding this for your operations." A copy of the September 13, 2019 e-mail is attached hereto and made a part hereof as Exhibit "B".

13. In November of 2019, Miller requested a sample of GMA's ilmenite so that US Iron could perform testing on the ilmenite.

14. In February of 2020, Miller provided Hanson an update on US Iron's testing of the ilmenite via e-mail that stated in relevant part "Also, I would like to confirm that an exclusivity agreement to purchase would be acceptable for 100% of your stockpiles?"

15. On February 5, 2020, Hanson responded by e-mail to Miller that stated in relevant part that "I'm very happy to hear that testing is going well! We have enough material to supply more than 10kt per year as you requested and could put

3

together a MOU or agreement to reflect that offtake if helpful once we agree on terms." A copy of the February 2020 e-mail exchange is attached hereto and made a part hereof as Exhibit "C".

16. On October 1, 2020, Hanson sent Miller an e-mail with terms for the sale of 30,000 MT of ilmenite from GMA's Fairless Hills, Pennsylvania plant. The e-mail stated in relevant part that "Will you review the below terms and, if acceptable, either send a PO or confirm via email and we will send a sales order?" A copy of the October 1, 2020 e-mail is attached hereto and made a part hereof as Exhibit "D".

17. On October 13, 2020, Miller sent Hanson US Iron's purchase order ("PO") for review. After some back and forth between Miller and Hanson regarding freight and handling terms, on October 16, 2020, Hanson responded by e-mail that "The PO looked good to me and I sent it on to GMA." A copy of the October 16, 2020 e-mail is attached hereto and made a part hereof as Exhibit "E".

18. During the subsequent months, Miller, Hanson and GMA continued to correspond regarding US Iron's purchase of 30,000 MT of ilmenite from GMA's Fairless Hills plant and the capability/rate for ports to load and ship the ilmenite. On November 17, 2020, Hanson sent Miller an e-mail with the contact information of a shipping line, BBC Chartering USA, LLC, that according to Hanson "can take 5kt

shipments and runs frequently between the US and SE Asia." A copy of the November 17, 2020 e-mail is attached hereto and made a part hereof as Exhibit "F."

19. At some point in the fall of 2020, Hanson became the Plant Manager of GMA's Coos Bay plant.

20. On or about December 9, 2020, Miller requested a 10 lbs. sample of the reprocessed ilmenite for further testing, which GMA shipped to US Iron on or about December 10, 2020.

21. On or about January 19, 2021, Hanson requested that Miller revise the PO to include a 3% or $0.24/T fee for the management of the shipment of the ilmenite. On January 22, 2021, Miller sent Hanson a revised PO in the amount of $1,145,700.00 for the purchase of 30,000/ST +/- 1000 tons of ilmenite including shipping/handling/port storage and the 3%/$0.24/T administrative fee. A copy of the revised PO is attached hereto and made a part hereof as Exhibit "G". The revised PO is dated October 10, 2020, the date of the original PO.

22. On February 10, 2021, Hanson informed Miller via e-mail that GMA has limited the sales of ilmenite to exclude sales in China. Hanson stated in relevant part that "GMA has therefore limited our sales to ex-China, if such a sale can be done. This is to avoid the ilmenite from competing with our supply to the same region. *I'm sorry for the additional limitation* and hope that we can still make a

deal happen." [Emphasis added]. A copy of the February 10, 2021 e-mail is attached hereto and made a part hereof as Exhibit "H".

23. The February 10, 2021 e-mail was the first time that US Iron was informed that GMA was putting a limitation on the sale of ilmenite to the Chinese market.

24. In early March of 2021, US Iron became aware that GMA was planning on selling 20,000 KT of its 40,000 KT stock pile of ilmenite from its Fairless Hills plant to a Chinese buyer.

25. On March 3, 2021, Miller sent an e-mail to Hanson raising an issue with the sale of the ilmenite to China as US Iron held the PO for such material. A copy of the March 3, 2021 e-mail is attached hereto and made a part hereof as Exhibit "I".

26. On March 10, 2021, Miller, Hanson and Liebeck had a teleconference to discuss GMA's shipment of ilmenite to China. Subsequent to the phone call, Miller sent Hanson and Liebeck an e-mail recapping the teleconference and that during the call it was represented that GMA no longer wished to sell ilmenite to US Iron and that the PO was not going to be honored.

27. On March 11, 2021, Liebeck confirmed by e-mail that it was not honoring the PO.

## **COUNT I - BREACH OF EXPRESS CONTRACT**

28. This is an action against GMA for damages that exceed $75,000.00 based on breach of an express contract.

29. The allegations set forth in paragraphs 1 through 27 above are realleged and incorporated by reference herein.

30. The revised PO sent to GMA at its request in January of 2021 represents a valid contract between the parties as the terms and conditions of the sale of ilmenite were negotiated by the parties and reduced to a writing.

31. GMA breached the contract.

32. GMA's breaches of the contract include, without limitation:

    a. GMA's failure to honor the PO.

    b. GMA's failure to sell US Iron the 30,000/ST of ilmenite.

33. GMA's breach has resulted in damages to US Iron as US Iron has not been able to utilize the ilmenite in its operations and fulfill its obligations to deliver ilmenite to third-party customers.

WHEREFORE, US Iron demands judgment against GMA for damages, together with prejudgment interest and costs, and such other and further relief as the Court deems proper and just.

## COUNT II - BREACH OF IMPLIED IN FACT CONTRACT

34. This is an action against GMA for damages that exceed $75,000.00 based on breach of an implied contract.

35. This Count is plead in the alternative to Count I.

36. The allegations set forth in paragraphs 1 through 27 above are realleged and incorporated by reference herein.

37. Between July 2019 and October 2020, GMA and US Iron discussed the possible purchase of GMA's ilmenite. As part of the process GMA provided US Iron with samples of the ilmenite so that US Iron could determine if the ilmenite was suitable for its purposes.

38. Between October of 2020 and January 2021, GMA and US Iron negotiated the terms of the sale of 30,000 ST +/- 1000 ST of ilmenite from GMA's Fairless Hills plant agreeing on a price per ST of ilmenite, shipping/handling/port storage of the ilmenite as well as administrative fees.

38. GMA, through Hanson, helped US Iron secure a shipping line and loading services for the ilmenite.

39. The actions of GMA from 2019 through January of 2021 evidence GMA's assent to the sale of the ilmenite to US Iron on the terms and conditions agreed to by the parties.

40. GMA breached the implied-in-fact contract between the parties.

41. GMA's breaches of the implied-in-fact contract include, without limitation:

    a. GMA's failure to honor the terms negotiated by the Parties.

    b. GMA's failure to sell US Iron the 30,000/ST of ilmenite.

42. GMA's breach has resulted in damages to US Iron as US Iron has not been able to utilize the ilmenite in its operations and fulfill its obligations to deliver ilmenite to third-party customers.

WHEREFORE, US Iron demands judgment against GMA for damages, together with prejudgment interest and costs, and such other and further relief as the Court deems proper and just.

## COUNT III - UNJUST ENRICHMENT

43. This is an action against GMA for damages that exceed $75,000.00 based on unjust enrichment.

44. This Count is plead in the alternative to Count I.

45. The allegations set forth in paragraphs 1 through 27 above are realleged and incorporated by reference herein.

46. GMA had previously had complaints of the quality of the ilmenite by its third-party customers.

47. US Iron spent time and resources to conduct testing on samples of GMA's ilmenite to ensure that the quality of the ilmenite was suitable for delivery to third-party customers.

48. US Iron determined that the ilmenite was suitable for delivery to third-party customers and identified markets and third-party customers who desired GMA's ilmenite.

49. GMA refused to sell its ilmenite to US Iron so that GMA could sell the ilmenite directly to those markets and third-party customers identified through US Iron's efforts.

50. It is inequitable for GMA to retain the benefit of US Iron's efforts to ensure the quality and marketability of the ilmenite without paying US Iron for the value of its efforts.

WHEREFORE, US Iron demands judgment against GMA for damages, together with prejudgment interest and costs, and such other and further relief as the Court deems proper and just.

Respectfully submitted this 5th day of August, 2021.

DUNLAP & SHIPMAN, P.A.

_____
Gary A. Shipman (FBN 0593435)
Michael J. Henry (FBN 0069044)
2063 S. County Highway 395
Santa Rosa Beach, FL 32459
Telephone: (850) 231-3315
Facsimile: (850) 231-5816
caroline@dunlapshipman.com
michael@dunlapshipman.com
*Attorneys for US Iron Fla, LLC*